# LEASE AGREEMENT
## NET NET NET

This **LEASE AGREEMENT** (hereinafter referred to as the "**Lease**") is entered into by and between **THE TEXAS DEVELOPMENT COMPANY** as leasing agent for **529 #49, LTD.** (hereinafter referred to as "**Landlord**") and **GAS PROCESS EQUIPMENT COMPANY** (hereinafter referred to as "Tenant").

## Article 1 – Leased Premises, Term and Use

### 1.01.   Leased Premises.

(a)      Upon the terms, provisions and conditions hereof, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the Premises depicted on the schematic attached hereto as Exhibit "A" and as additionally set forth in the terms and descriptions attached hereto as Exhibit "B," which Premises are located at 11965 FM 529, Houston, Harris County, Texas, 77041 (the real property and improvements, together with any personal property and equipment furnished by Landlord located thereon, being hereinafter collectively referred to as the "**Premises**").

(b)      It is hereby stipulated and agreed for all purposes that the Premises shall consist of the real property and improvements described in Exhibits "A" and "B" attached hereto.

**1.02.   Term.**  Subject to the terms, provisions and conditions hereof, this Lease shall continue in force for a term (hereinafter referred to as the "**Term**") of thirty-six (36) calendar months, beginning on the first (1st) day of December, 2021 (hereinafter called the "**Commencement Date**") and ending on the thirtieth (30th) day of November, 2024 (hereinafter referred to as the "**Termination Date**") as set out in Exhibit "C."

**1.03.   Leasehold Improvements.**  By no later than the date this Lease is signed, Tenant shall have provided to Landlord, in writing, a layout of the Improvements and Tenant's selections of color and other Tenant optional materials for all of the Leasehold Improvements which are described in the "Landlord Will" section of Exhibit "B" hereof which Landlord has agreed to furnish Tenant (the "**Leasehold Improvements**").  Any delay caused by Tenant's failure to timely provide all information to Landlord according to this Paragraph 1.03 or any delay caused by any changes by Tenant after this Lease is signed shall constitute a "Tenant Delay" which will extend the Commencement Date and the Termination Date for the additional time caused by Tenant's Delay and Tenant shall pay to Landlord as Additional Rent, as herein defined, all loss of Rent which recalculated from any Delay in the Commencement Date of this Lease, if any, resulting from such Tenant Delay.





EXHIBIT

1



**1.04.    Estimated Completion Date; Excused Delay.**  Once Landlord has received the selections and layout as set forth in Paragraph 1.03. subject to any casualties, acts of God, the public enemy, governmental embargo or other restrictions, or action or non-action of public utilities, local, state or federal governments or any other cause which may delay Landlord's work ("**Landlord's Delay**"), Landlord shall diligently proceed to "substantially complete" as that term is defined herein the construction of the Leasehold Improvements which are described in the "Landlord Will" section of Exhibit "B" hereof.  For the purposes of this Lease Agreement "substantially complete" is defined as "completed to the extent that Tenant is able to conduct its business from the Premises, without undue hardship, subject to Punch List items as defined herein."  To the extent any Delay is caused by "Landlord's Delay," the Commencement Date shall be extended for the additional time caused by Landlord's Delay as Tenant's sole and exclusive remedy and Landlord shall have no liability for any such Delay.

**1.05.    Delay in Commencement.**  Notwithstanding said Commencement Date, or any other provision of this Lease, if for any reason, Landlord cannot deliver possession of the Premises to Tenant on the Commencement Date, Landlord shall not be subject to any liability therefor and Tenant does hereby fully release and discharge Landlord for any such liability or damages.  In such event, the term of this Lease shall remain the same; the Commencement Date and Termination Date shall both be extended for the number of days which expired from the original Commencement Date to the date the Landlord tenders possession of the Premises to Tenant.  In such a case, (if such Delay was not a Tenant Delay, as defined herein which Tenant Delay shall be governed by the provision of Paragraph 1.03 above), Tenant shall not be obligated to pay Rent until possession of the Premises is tendered to Tenant; provided, however, that if Landlord shall not have tendered possession of the Premises within ninety (90) days from said Commencement Date, Tenant may, at Tenant's option, by notice in writing delivered to Landlord within ten (10) days after said 90-day period, cancel this Lease.  If Tenant cancels the Lease, as provided in this Paragraph 1.05, Tenant's sole and exclusive remedy as against Landlord, shall be the return by Landlord of the first month's Rent and Security Deposit previously deposited with Landlord by Tenant pursuant to Paragraph 2.06 hereof and upon such return, the Parties shall be fully discharged from all obligations hereunder as if this Lease had never been signed by either Party.

**1.06.    Use.**  Tenant shall comply with all laws, ordinances and regulations applicable to the use of the Premises, and shall promptly comply with all orders and directives for the correction, prevention and abatement of nuisances or disturbances in or upon or connected with the Premises, all at Tenant's sole expense.  Tenant shall not permit any objectionable or unpleasant odors, smoke, dust, gas, noise, or vibrations to emanate from the Premises, nor take any other action which would constitute a nuisance or would disturb or endanger any other tenants of the Industrial Park in which the Premises are situated or unreasonably interfere with the use by other tenants in the Industrial Park of their respective Premises.  Tenant will not permit the Premises to be used for any purpose or in any manner, including, without limitation,

any method of storage which would render any insurance maintained by Landlord or other tenants if any, void or the insurance risk more hazardous. If Tenant vacates the Premises during the term of this Lease and causes Landlord to obtain insurance, then Tenant shall pay, as Additional Rent, the cost of such insurance to Landlord for the remainder of the Term.

    **1.07.**   <u>**Possession.**</u>  In the event that Landlord shall permit Tenant to occupy the Premises prior to the Commencement Date, such occupancy shall be subject to all of the provisions of this Lease. Said early possession shall not advance either the Commencement Date or the Termination Date of this Lease. Regardless of the date of possession, the term of this Lease shall be for a minimum number of months as shown in Paragraph 1.02 above. In the event that Landlord cannot deliver to Tenant the Premises set forth in Exhibit "A" or the Leasehold Improvements set forth in the "Landlord Will" section of Exhibit "B" or any part thereof, on the scheduled date, Landlord shall not be liable for any damages therefor and the provisions of Paragraph 1.05 shall apply.

    **1.08.**   <u>**Delivery of Possession.**</u>  Tenant hereby accepts this Lease and the Premises only upon the representations, covenants and conditions specifically set forth herein and subject to any encumbrances, covenants, conditions, restrictions and other matters of record and all applicable zoning, municipal, county, state and federal laws, ordinances and regulations governing and regulating the use of the Premises. Tenant shall take possession of the Premises, when the Premises are substantially complete and useable as a business facility. Tenant shall be conclusively deemed to have accepted the Premises in an "AS IS" condition when Tenant first physically occupies the Premises after the execution by Tenant of this Lease, subject only to the written Punch List as provided for in Paragraph 3.01 hereof.

## Article 2 – <u>Rent, Security Deposit</u>

    **2.01.**   <u>**Partial Month's Rent.**</u>  If the Commencement Date or Termination Date is not the first (1st) day of a calendar month, respectively, Tenant shall pay Landlord on the Commencement Date or the first (1st) day of the month in which the Termination Date occurs, as the case may be, the Rent and Additional Rent due for the partial month, calculated in the proportion that the number of days remaining in that month bears to the total number of days in that month.

    **2.02.**   <u>**Rent.**</u>  Tenant shall pay the Landlord as Base Rent for the Premises the installments as set forth in Exhibit "C" attached hereto and incorporated herein by reference for all purposes. The Base Rent shall be due and payable in advance in installments which are to be received by Landlord on or before the first (1st) day of the month for each month set forth in Exhibit "C." Tenant will be billed for the second partial or full month's Rent upon determination of the Commencement Date; however, the Rent is due on or before the first (1st) day of the month for each month which is set forth in Exhibit "C" whether or not Tenant receives an

invoice for said Rent.  Rent is late unless it is received by Landlord on or before the fifth (5th) calendar day after the Rent is due.

2.03.   **Additional Rent.**  Tenant, as consideration for this Lease and the leasing of the Premises, covenants and agrees to pay Landlord Additional Rent as herein defined in this Lease Agreement.

2.04.   **General.**  Rent and Additional Rent (sometimes hereinafter referred to as "**Rent**") shall be due and payable in legal tender of the United States of America to Landlord at the address shown in Section 8.04 or to such other person or at such other address as Landlord may from time to time designate in writing.  The Rent and Additional Rent shall be paid as an independent obligation, without notice, demand, abatement, deduction or offset except as otherwise expressly provided for in Sections 5.01 and 5.02.

2.05.   **TRIPLE NET INTENT.**  It is the purpose and intent of Landlord and Tenant that Rent, and Additional Rent provided for in this Lease shall be **ABSOLUTELY NET TO LANDLORD,** and that Tenant shall pay, without notice or demand and without abatement, deduction or offset and save Landlord harmless from and against, all taxes, insurance (including the cost of any drainage or utility charge, the cost of real property taxes as set forth in Paragraph 4.03 hereof and the cost of the insurance set forth in Paragraph 7.01 hereof), together with all expenses of maintenance, repair and replacement, except for those assumed by Landlord, as set forth specifically in Paragraphs 4.05 or 4.06 hereof, if any, and all other charges, expenses and obligations of every kind and nature whatsoever relating to the Premises which may arise or become due during the Term of this Lease.  If Tenant is required to make any payment or incur any expense as provided in this Lease and fails to do so, then Landlord, at its option, may make the payment or incur the expense on Tenant's behalf, and the cost thereof shall be charged to Tenant as Additional Rent and shall be due and payable by Tenant within ten (10) days from receipt of Landlord's invoice and is subject to the Late Charges set forth in Paragraph 2.08 hereof and interest at the rate of ten percent (10%) per annum as set forth in Paragraph 6.02 hereof, both commencing ten (10) days from receipt of Landlord's invoice.

2.06.   **Security Deposit.**  Landlord hereby acknowledges receipt of $ 14,985.00 representing the first month's Base Rent paid in advance, to be applied to the Rent for the first month of the Term when due.  Landlord also acknowledges receipt of $14,985.00 representing Tenant's Deposit (hereinafter referred to as the "**Security Deposit**") as Security for the full and faithful performance by Tenant of the terms, conditions and covenants of this Lease which are to be performed and kept by Tenant.  Landlord may apply any portion of the Security Deposit as may be necessary to cure an Event of Default by Tenant, which is hereinafter defined, including, but not limited to, the failure of Tenant to pay Rent, Additional Rent or any other charges which accrue in favor of Landlord or Landlord's agents or subcontractors for goods or services furnished to the Premises at Tenant's request, which are not required to be furnished by Landlord pursuant to this Lease.  In the event Tenant fails to repair damages caused by the removal of fixtures allowed to be removed under Section 4.11, Landlord may apply any portion of the Security Deposit as may be necessary to make such repairs.  If Landlord so uses or applies all or



any portion of the Security Deposit pursuant to the terms of this Section, Tenant shall, within fifteen (15) days after written demand from Landlord, deposit cash with Landlord in an amount sufficient to restore the Security Deposit to the full amount hereinabove stated and Tenant's failure to timely do so shall constitute a Default and a breach of this Lease. Further, Landlord's deduction of the amounts owed by Tenant to Landlord from the Security Deposit shall in no event release Tenant from being in Default under the terms of this Lease. Landlord shall not be required to keep the Security Deposit separate from its general accounts. If Tenant performs all of Tenant's obligations pursuant to the Lease, the Security Deposit or so much thereof as has not been applied by Landlord shall be returned to Tenant thirty (30) days after Tenant delivers to Landlord written demand for the return of the Security Deposit, providing Landlord with a current forwarding address to remit the return of the Security Deposit.

**2.07.   Payments for Other Services.**  Unless otherwise specified herein, Tenant agrees to pay to Landlord as Additional Rent, all charges for any services, goods or materials furnished by Landlord or Landlord's agents or subcontractors at Tenant's request which are not required to be furnished by Landlord under this Lease, no later than ten (10) days after Landlord renders a statement therefor to Tenant.

**2.08.   Late Charges.**  In the event any installment of Rent or Additional Rent, as defined herein, has not been received by Landlord within five (5) calendar days after the date the amount was due, a Late Charge of five cents ($.05) per each dollar so overdue shall be charged by Landlord, as Additional Rent, for the purpose of defraying Landlord's administrative expenses incident to the handling of such overdue payments, and Tenant agrees to pay such Additional Rent to Landlord upon demand.

## Article 3 – Premises Conditions, Signs, Access

**3.01.   Condition of the Premises.**  In the event Tenant physically occupies the Premises after this Lease is signed by Tenant, then Tenant shall be conclusively deemed to have acknowledged that Tenant has the right to, and has in fact, made a full and complete inspection of the Premises and Improvements prior to such occupancy. Tenant hereby acknowledges that Tenant has made its own determination that (a) there are no legal, contractual or other restrictions on the use of the Premises which would affect Tenant and (b) Tenant is familiar with and satisfied with the condition of the premises and (c) Tenant has made Tenant's own determination as to the suitability, quantity, quality and condition of the Premises and (d) the Premises are fit for any particular purpose or use required by Tenant. Accordingly, Tenant is not relying upon, and Landlord makes no warranty or representation, express or implied, with regard to the Premises or any part thereof, and Tenant waives any implied warranty including, but not limited to, any **Warranty of Merchantability or Fitness for a Particular Purpose** for the Premises or any part thereof. Tenant accepts the Premises in the condition existing as of the Commencement Date or the first day of Tenant's physical occupancy, after Tenant has signed this Lease, whichever date comes first. Notwithstanding the above with respect to the

Improvements, Landlord has agreed to make as set forth in the "Landlord Will" section of Exhibit "B" Tenant shall notify Landlord in writing of any and all defects within ten (10) days of the date Landlord tenders possession of the Exhibit "B" Improvements to Tenant. Tenant agrees to give Landlord a written Punch List within ten (10) days of the date Landlord tenders possession of the "Exhibit B" Improvements and Tenant agrees that any failure to provide Landlord with such written Punch List shall conclusively establish acceptance of the Improvements by Tenant in an "AS IS" condition and a representation by Tenant that there are no defects on or about the Premises. Specifically, but without limitation, Tenant acknowledges that neither Landlord nor Landlord's agents or employees have made any representation or warranty as to the suitability or fitness of the Premises for the conduct of Tenant's business or any other matter and Tenant waives any implied warranty that the Premises or any part thereof, are suitable for Tenant's purpose. Accordingly, **IN ADDITION, TENANT HEREBY RELEASES LANDLORD FROM ANY CLAIM OR CAUSE OF ACTION, OF ANY KIND, FOR DAMAGES, INDEMNITY, CONTRIBUTION OR ANY OTHER RELIEF INCLUDING, BUT NOT LIMITED TO, THE CONSEQUENCES OF LANDLORD'S OWN NEGLIGENCE, CAUSED BY OR RELATING TO THE CONDITION OF THE PREMISES, INCLUDING ANY PART THEREOF, OR THEIR SUITABILITY FOR TENANT'S PURPOSES.**

    **3.02.** **Signs.** No signs, symbols, or identifying marks shall be placed on the Premises without the prior written approval of Landlord. If the Premises are located in Northwoods Industrial Park, the Landlord shall, unless otherwise agreed in writing, on or about the initial Commencement Date, install one sign with Tenant's name which shall be similar in size, color and other characteristics as that of Landlord's standard Tenant signs in Northwoods Industrial Park, provided Tenant provides Landlord the exact name to be used on the sign. Any future signs will be at Tenant's expense.

    **3.03.** **Screening.** Tenant shall not keep any personal property, goods, materials, incinerators, storage tanks, refuse containers or equipment in the open or exposed to public view. If it should become necessary to store or keep such materials or equipment in the open, they shall be screened from view in a manner approved by Landlord in writing.

    **3.04.** **Access by Tenant Prior to Commencement of Term.** In the event Tenant and its employees, agents and other invitees, enter upon the Premises prior to the Commencement Date pursuant to Paragraph 1.07 to enable Tenant to do such things as may be required by Tenant to make the Premises ready for Tenant's occupancy, or otherwise, such parties will not interfere with or delay the performance of any activities of Landlord or other occupants of the Premises. Landlord may withdraw such permission upon (24) hours' notice to Tenant if Landlord determines that Tenant has or will cause such interference or delay. **ANY SUCH ENTRY INTO THE PREMISES PRIOR TO THE COMMENCEMENT DATE SHALL BE AT TENANT'S SOLE RISK AND LANDLORD, ITS EMPLOYEES, AGENTS, CONTRACTORS OR SUBCONTRACTORS SHALL NOT BE LIABLE FOR ANY PERSONAL INJURY, DEATH OR PROPERTY DAMAGE WHICH MAY BE SUFFERED IN OR ABOUT THE PREMISES BY TENANT OR ITS EMPLOYEES,**



AGENTS, CONTRACTORS, SUPPLIERS OR WORKMEN, OR THEIR PROPERTY AND IN CONNECTION THEREWITH IN ADDITION TO AND WITHOUT WAIVING ANY OTHER INDEMNITY CONTAINED IN THIS LEASE INCLUDING WITHOUT LIMITATION SECTION 7.02 BELOW, TENANT HEREBY RELEASES AND INDEMNIFIES LANDLORD, ITS CONTRACTORS OR SUBCONTRACTORS FROM ANY CLAIM OR CAUSE OF ACTION, OF ANY KIND, FOR DAMAGES, INDEMNITY, CONTRIBUTION OR ANY OTHER RELIEF INCLUDING, BUT NOT LIMITED TO, THE CONSEQUENCES OF LANDLORD'S OWN NEGLIGENCE, CAUSED BY OR RELATING TO TENANT'S ACCESS TO THE PREMISES PRIOR TO THE COMMENCEMENT DATE.

### Article 4 – Tenant's Covenant

**4.01.   Payments by Tenant.** Tenant agrees to timely pay the Rent, Additional Rent and all sums provided to be paid to Landlord hereunder at the times and in the manner herein provided and at all times during the term of this Lease to occupy and conduct business on the Premises.

**4.02.   Notice to Landlord.** In the event Tenant believes Landlord has breached any of Landlord's obligations, Tenant shall give written notification to Landlord of such breach within ten (10) days after Tenant learns of such breach or becomes aware of facts which reasonably should have made Tenant aware of such breach or such breach is waived; and Landlord shall have thirty (30) days from such notification to cure the alleged breach or commence to cure such breach.

**4.03.   Property Taxes.**

(a)      **Taxes and Assessments.** Landlord agrees to pay, as they become due and payable during the term of this Lease and before they become subject to penalties or interest, **ALL AD VALOREM TAXES** lawfully levied or assessed against the Premises or any part thereof, which are owned by Landlord, including Improvements.  Such **AD VALOREM TAXES** shall be one hundred percent (100%) reimbursable by Tenant to Landlord as ADDITIONAL RENT.  Landlord and Tenant stipulate and agree that for the purpose of this Lease, Tenant's responsibility for taxes begins on the first (1st) day of the month of the initial Commencement Date as defined in the original Paragraph 1.02 of the original Lease Agreement, without regard to any extensions of this Lease as a result of subsequent Amendments or options to this Lease and ends on the last day of the month of the Lease Termination Date as extended by Lease Amendment or Options, if any.  In November or December of each tax year Landlord shall provide Tenant with a copy of the AD VALOREM TAX bills applicable to the Premises issued by the Harris County taxing authorities, along with a detailed computation of the amount of taxes due for that tax year which are attributable to the Premises, which amount will be charged to Tenant as ADDITIONAL RENT which shall become due and payable by Tenant to Landlord within twenty (20) days from receipt of Landlord's invoice.  In the event Tenant fails to pay

Landlord such amount within such 20-day period, Tenant shall be in DEFAULT and the ADDITIONAL RENT shall be subject to late charges as provided for in Paragraph 2.08 hereof and interest at the rate of 10% per annum as provided for in Paragraph 6.02 hereof, commencing after twenty (20) days from Landlord's invoice and continuing to the date Tenant reimburses Landlord. In the alternative, at Landlords sole option, Landlord may elect to prorate Tenant's tax liability on a monthly basis and invoice Tenant as additional rent, one twelfth (1/12) of Tenant's estimated tax for the Premises for the current tax year based on the last tax year's value of the Premises. If Landlord so elects, Landlord shall pay all real estate taxes directly to the taxing authorities prior to any assessment of penalties or interest. In the event the actual tax payment exceeds the estimated tax paid by Tenant, Landlord shall invoice Tenant for the excess and Tenant shall pay such amount as additional rent, which shall be due and payable by Tenant within ten (10) days from the receipt of Landlord's invoice and such amount is subject to the late charges set forth in Paragraph 2.08 hereof and interest at the rate of 10% per annum as set forth in Paragraph 6.02 hereof, both commending ten (10) days from receipt of Landlord's invoice. In the event the amount paid by Landlord to the taxing authorities is less than the amount Tenant has paid to Landlord pursuant to the estimate, then Landlord shall deduct the difference from the next pro rata monthly payment Tenant is required to make for estimated real property tax payments for the succeeding tax year.

(b)     **Landlord's Personal Property Taxes.**  Tenant shall cause the leasehold improvements, trade fixtures, furnishings, equipment and all other personal property provided by Landlord to Tenant, pursuant to this Lease or otherwise, to be assessed and billed separately from the property of Tenant.

(c)     **Tenant's Personal Property Taxes.**  Tenant shall cause the trade fixtures, furnishings, equipment and/or the personal property owned or leased by Tenant and situated on or about the Premises to be assessed and billed separately from the property of Landlord. Tenant shall pay all taxes assessed against Tenant's property.

(d)     **Protest of Values.**  In the event the Landlord does not file a protest before the Appraisal Review Board for either the real property or the Improvements owned by the Landlord, situated on the Premises, then the Tenant may do so, at Tenant's sole option, provided, Tenant does so at its sole responsibility, cost and expense. Tenant agrees to take whatever steps are necessary to keep itself informed of the appraised values for the real and personal property situated on the Premises and the deadlines and requirements of the taxing or other authorities for protesting such taxes and Tenant shall take whatever steps Tenant believes are necessary to protect Tenant's rights to protest and appeal such taxes, providing Landlord, for informational purposes only, copies of all documents regarding same as soon as such documents are produced by Tenant or its agents or representatives or as soon as the document is received by Tenant, its agents or representatives.     **TENANT SPECIFICALLY ACKNOWLEDGES THAT LANDLORD SHALL HAVE NO LIABILITY TO TENANT FOR ANY MATTER CONNECTED OR RELATED TO PROPERTY TAXES.  TENANT DOES HEREBY RELEASE LANDLORD FOR ANY LIABILITY TO TENANT THEREFOR, INCLUDING, BUT NOT LIMITED TO, THE CONSEQUENCES OF LANDLORD'S**



**OWN NEGLIGENCE, OR LANDLORD'S FAILURE TO PROVIDE NOTICES TO TENANT. IT BEING AGREED THAT TENANT IS FULLY RESPONSIBLE FOR KEEPING ITSELF INFORMED OF ALL TAX MATTERS,** Landlord agrees to provide Tenant with any reasonable information received by Landlord from the taxing authorities upon a specific written request therefor, from Tenant.

**4.04.   Utilities.**

(a)      Tenant shall pay all water, gas, electricity, telephone, and any other utilities and/or services supplied to the Premises, on a timely basis.  Any nonpayment shall constitute an Event of Default by Tenant hereunder.

(b)      In those instances where Tenant pays for the utilities and/or services directly to the entity furnishing the utilities and/or services, Landlord shall have no liability therefor.

(c)      In those instances where Landlord pays for the utilities and/or services directly to the entity furnishing the utilities and/or services, Landlord shall determine the amount of utilities and/or services used by Tenant on the Premises by meter.  Tenant agrees to pay Landlord as ADDITIONAL RENT for such utilities and/or services within fifteen (15) days from receipt of Landlord's statement setting forth the amount of said utilities and/or services used by Tenant. Without further notice, in the event Tenant fails to make said payment within said 15-day period, Landlord may interrupt or cause the interruption of the utility and/or service furnished to Tenant and such charges shall be subject to late charges as provided for in Paragraph 2.08 hereof and interest at the rate of 10% per annum as provided for in Paragraph 6.02 hereof.

(d)      No interruption in, or temporary stoppage of, any of the aforesaid services caused by repairs, renewals, Improvements, alterations, strikes, lockouts, labor controversy, accidents, inability to obtain fuel or supplies, or other causes shall be deemed an eviction or disturbance of Tenant's use and possession, or render Landlord liable for damages, by abatement of Rent or otherwise or relieve Tenant from any obligation herein set forth.

**4.05.   Repairs by Tenant.**  During the term of this Lease Tenant shall, as soon as possible, at its sole cost, repair or replace any damage to the Premises, or any part thereof whether same is caused by Tenant, Tenant's agents, employees, invitees, visitors or any third party, or by the passage of time or the elements.  If Tenant fails to make such repairs or replacements within fifteen (15) days after receipt of a written notice to make repairs from Landlord, Landlord may, but is not obligated to do so, at its option, make such repairs or replacements and the cost thereof shall be payable by Tenant on demand as Additional Rent hereunder, and failure of Tenant to pay such costs within fifteen (15) days shall constitute a failure to pay Rent when due and an Event of Default by Tenant hereunder.  Additionally, in such event, Tenant shall pay Landlord Late Charges as provided for in Paragraph 2.08 hereof and interest as provided for in Paragraph 6.02 hereof, on the amount owing from the date of Landlord's invoice to the date Tenant reimburses Landlord at the rate of ten percent (10%) per annum or the highest lawful rate of interest allowed by the State of Texas, whichever sum is less.

**4.06.   Care of Premises.** Tenant shall not commit or allow any waste or damage to be committed on or to any portion of the Premises during the term of this Lease, and at the expiration or Termination Date of this Lease, Tenant shall deliver up the Premises to Landlord in as good condition as on the initial Commencement Date, ordinary wear and tear excepted. Additionally, Tenant shall, during the term of this Lease, keep in good order, condition and repair, the Premises including every part thereof, including, but not limited to, all air-conditioning, ventilating and heating equipment, cranes, hoists, runways and related equipment, plumbing and fixtures, electrical, water, piping sprinkler systems, and other fixtures or equipment provided by or owned by Landlord, which are a part of the Premises, together with all sidewalks, landscaping, driveways, parking lots, fences and signs located in the areas which are included within the Premises. Tenant shall ensure that the grass and plant material on the Leased Premises is properly watered, cut and cared for. If Tenant fails to comply with any portion of this Paragraph within five (5) days after receipt of a written Notice from Landlord to perform maintenance. Landlord may but is not obligated to do so, at its option perform such maintenance and the cost thereof shall be payable by Tenant on demand as Additional Rent hereunder, and failure of Tenant to pay such costs within fifteen (15) days shall constitute a failure to pay Rent when due and an Event of Default by Tenant hereunder. Additionally, in such event, Tenant shall pay Landlord Late Charges as provided for in Paragraph 2.08 hereof and interest on the amount owing as set forth in Paragraph 6.02 hereof, from the date of Landlord's invoice to the date Tenant reimburses Landlord at the rate of ten percent (10%) per annum or the highest lawful rate of interest allowed by the State of Texas, whichever sum is less. Landlord shall incur no expenses nor have any obligation whatsoever in connection with maintenance of the Premises or any part thereof, and Tenant expressly waives the benefit of any statute now or hereafter in effect which would otherwise afford Tenant the right to make repairs at Landlord's expense or to terminate this Lease because of Landlord's failure to keep the Premises in good order, condition and repair.

**4.07.   Joint Inspection Upon Vacation.** Tenant shall give written notice to Landlord at least thirty (30) days prior to vacating the Premises for the express purpose of arranging a meeting with Landlord for a joint inspection of the Premises. In the event of Tenant's failure to give such notice and arrange such joint inspection, Landlord's inspection at or after Tenant's vacation of the Premises shall be conclusively deemed correct for purposes of determining Tenant's responsibility for repairs and restoration hereunder.

**4.08.   Assignment or Sublease.**

(a)     Tenant shall not assign this Lease or sublease the Premises or any part thereof or mortgage, pledge or hypothecate its leasehold interest or grant any concession or license within the Premises (any such assignment, sublease, mortgage, pledge, hypothecation, or grant of a concession or license being hereinafter referred to in this Section 4.08 as a "Transfer") without the prior express written consent of Landlord, which such consent shall not be unreasonably withheld, provided Tenant and Tenants Assignee or Subtenant comply with all requirements set forth in Paragraphs 4.08, 4.09 and 4.10 hereof. Any attempt to effect a Transfer without such



written permission of Landlord shall be void and of no effect.  In order for Tenant to make a Transfer, Tenant must request in writing Landlord's written permission at least sixty (60) days in advance of the date on which Tenant desires to make a Transfer, after which Landlord shall then have a period of thirty (30) days following receipt of such notice within which to notify Tenant in writing that Landlord elects (i) to terminate this Lease as to the space so affected as of the date so specified by Tenant in which event Tenant will be relieved of all future obligations hereunder as to such space; (ii) to permit Tenant to assign or sublet such space, subject, however, to such assignees or subleasees written assumption of all covenants, duties and obligations of Tenant as set forth in Paragraph 4.08 (b); or (iii) to refuse consent to Tenant's requested Transfer and to continue this Lease in full force and effect as to the entire Premises.  If Landlord shall fail to notify Tenant in writing of such election within said 30-day period, Landlord shall be deemed to have elected option (iii) above.  If Landlord elects to exercise option (ii) above, Tenant agrees to provide at its expense, direct access from any sublet space or concession area to a public corridor of or for the Premises.  The prohibition against a Transfer contained herein shall be construed to include a prohibition against any Transfer by operation of law.

(b)     Notwithstanding that the prior express written permission of Landlord to a Transfer may have been obtained under the provisions of Section 4.08(a), the following shall apply:

(1)     In the event of an assignment or sublease, Tenant shall as a condition precedent to the assignment or sublease (i) cause the assignee or sublessee to expressly assume in writing and to agree to perform all of the covenants, duties and obligations of Tenant hereunder, and such assignee or sublessee shall be jointly and severally liable therefor along with Tenant; and (ii) agree with Landlord that in the event that the Rent, Additional Rent or other consideration due and payable by a sublessee or assignee under any such permitted sublease or assignment exceeds the Rent or Additional Rent for the portion of the Premises so transferred, then Tenant shall pay Landlord as Additional Rent hereunder all such excess rental and other consideration immediately upon receipt thereof by Tenant from such transferee;

(2)     A signed counterpart of all instruments relative to the Transfer executed by all Parties to such transaction with the exception of Landlord shall be submitted by Tenant to Landlord prior to or contemporaneously with the request for Landlord's written consent thereto; it being understood that no such instrument shall be effective without the written consent of Landlord;

(3)     No usage of the Premises different from the usage herein provided to be made by Tenant shall be permitted unless agreed to in writing by Landlord, and all of the terms and provisions of this Lease shall continue to apply after a Transfer; and

(4)     In any case where Landlord consents to a Transfer, Tenant will nevertheless remain directly and primarily liable for the performance of all the covenants, duties and obligations of Tenant hereunder, including, without limitation, the obligation to pay all Rent,

Additional Rent, utilities, taxes, maintenance, or any other cost or expense herein provided to be paid by Tenant to Landlord, and Landlord shall be permitted to enforce the provisions of this Lease against the undersigned Tenant or any transferee, or both, without demand upon or proceeding in any way against any other persons.

(c)     If Tenant is a corporation, then any Transfer of this Lease by merger, consolidation, or dissolution or any change in ownership or power to vote a majority of the voting stock in Tenant outstanding at the time of execution of this Lease shall constitute a Transfer for the purpose of this Lease;  provided, however, that acquisition of all stock of a corporate tenant by any corporation, the stock of which is registered pursuant to the Securities Act of 1933 or the merger of a corporate tenant into such a corporation, the stock of which is so registered, shall not be deemed to be a violation of Section 4.08 (a).  For purposes of this Section 4.08 (c), the term "voting stock" shall refer to shares of stock regularly entitled to vote for the election of directors of the corporation involved.

(d)     If Tenant is a general partnership having one or more corporations as partners or if Tenant is a limited partnership having one or more corporations as general partners, the provisions of Section 4.08 (c) shall apply to each of such corporation as if such corporations alone had been the Tenant hereunder.  If Tenant is a general or limited partnership, joint venture, or other form of association, the transfer of a majority of the ownership interests therein shall constitute a Transfer for the purposes of this Lease.

(e)  .  The consent by Landlord to a particular Transfer shall not be deemed a consent to any other subsequent Transfer.  If this Lease, the Premises or the Tenant's leasehold interest therein, or if any portion of the foregoing is transferred, or if the Premises are occupied in whole or in part by anyone other than Tenant without the prior consent of Landlord as provided herein, Landlord may nevertheless collect Rent from the Transferee or other occupant and apply the net amount collected to the Rent payable hereunder, but no such transaction or collection of Rent or application thereof by Landlord shall be deemed a waiver of the provisions hereof or a release of Tenant from the further performance by Tenant of its covenants, duties and obligations hereunder.

**4.09.    Continuing Liability.**  The Parties agree and stipulate that in no event shall any assignment or sublease ever release Tenant from any obligation or liability hereunder.  Any collection by Landlord from any Assignee or Sublessee or any other party shall not be construed to constitute a novation or a release of Tenant from further performance of its obligations under this Lease, under any circumstances, unless agreed to in a separate written agreement of Landlord duly signed by Landlord.  For the purposes of this provision, this Lease Agreement shall not be construed as such written agreement.

**4.10.    Condition of Tenant Premises.**  As a condition precedent to any assignment or sublease, both Sublessor or Assignor and Sublessee or Assignee must acknowledge and agree that for the purposes of the condition of the Premises at the end of the Sublease or Assignment period, or upon the expiration or Termination of this Lease, both the Sublessor or Assignor and



the Sublessee and Assignee, shall be jointly and severally responsible to Landlord for returning the Premises to Landlord at the end of such term in the condition the Premises were in at the original Commencement Date between Landlord and Tenant, less reasonable wear and tear.

**4.11.   Alterations, Additions, Improvements.**   Tenant shall not make any Improvements, alterations, additions or installations in or to the Premises (hereinafter referred to as "**Work**") without Landlord's prior written consent, which consent may be withheld in Landlord's sole discretion whether or not Landlord has actual knowledge or should have actual knowledge of such alteration, addition or Improvement. All Work done by Tenant or its agents, employees or contractors shall be done in such a manner as to avoid labor disputes. Tenant shall pay the cost of all such Improvements, alterations, additions or installations and the cost of painting, restoring or repairing the Premises occasioned by such Improvements, alterations, additions or installations on or before the Lease Termination Date. Upon completion of the Work, Tenant shall furnish Landlord with contractor's affidavits, full and final waivers of liens and receipted bills covering all labor and materials expended and used. The Work shall comply with all insurance requirements and all laws, ordinances, rules and regulations of all governmental authorities and shall be construed in a good and workmanlike manner. Tenant shall not be allowed to make any Improvements, alteration, addition or installation if such action results or would result in a labor dispute or otherwise would materially interfere with Landlord's operation of the Property. **IN ADDITION TO AND WITHOUT WAIVING ANY OTHER INDEMNITY CONTAINED IN THIS LEASE INCLUDING  WITHOUT LIMITATION SECTION 7.02 BELOW, TENANT AGREES TO INDEMNIFY, DEFEND AND HOLD LANDLORD FOREVER HARMLESS FROM ANY AND ALL CLAIMS AND LIABILITIES OF ANY KIND AND DESCRIPTION WHICH MAY ARISE OUT OF OR BE CONNECTED IN ANY WAY WITH SAID IMPROVEMENTS, ALTERATIONS, ADDITIONS OR INSTALLATIONS, OR THE WORK AS DEFINED HEREIN.** Unless Landlord agreed in writing, at the time of Landlord's approval of such alterations, that Tenant did not have to remove the alterations at the Lease Termination Date, Tenant shall, at Tenant's expense, remove any Improvements, alterations, additions or installations installed by Tenant on the Premises and repair or restore any damage caused by the installation and removal of such Improvements, alterations, additions or installations prior to the Lease Termination Date.

**4.12.   Rights of Landlord.**   Landlord shall have all rights set forth in the Texas Property Code, as amended, for Landlords of Commercial Buildings.

**4.13.   Tenant May Not Encumber.**   Tenant has no authority to encumber the Premises with any lien, and Tenant shall not suffer or permit any such lien to exist. Should any such lien hereafter be filed as a result of any action or inaction of Tenant, its agents, contractors or subcontractors, Tenant shall promptly discharge the same at its sole cost and **IN ADDITION TO AND WITHOUT WAIVING ANY OTHER INDEMNITY CONTAINED IN THIS LEASE INCLUDING WITHOUT LIMITATION SECTION 7.02 BELOW, TENANT HEREBY INDEMNIFIES LANDLORD FROM ANY DAMAGES OR EXPENSES CAUSED BY SUCH LIEN INCLUDING ATTORNEY'S FEES AND COSTS.** If such lien is not paid or fully bonded by a surety approved by Landlord within fifteen (15) days after

receipt by Tenant of written notice thereof from Landlord, Landlord shall have the option to pay such lien and Tenant agrees to pay Landlord the amount paid by Landlord, together with costs, and all expenses within fifteen (15) days of notice that Landlord has paid such lien. Tenant agrees to pay Landlord interest on the amounts paid by Landlord at the rate of ten percent (10%) per annum from date of payment by Landlord, or the highest lawful rate of interest allowed by the State of Texas, whichever is less, and all attorney's fees, damages and costs incurred by Landlord as a result of such lien.

**4.14.   Landlord's Lien.**  In addition to the statutory Landlord's lien, Landlord shall have, at all times, a valid security interest to secure payment of all Rent and other sums of money becoming due hereunder from Tenant, and to secure payment of any damages or loss which Landlord may suffer by reason of the breach by Tenant of any covenant, agreement or condition contained herein, upon all goods, wares, equipment, fixtures, furniture, Improvements, accounts, contract rights, chattel paper and other personal property of Tenant presently or which may hereafter be situated on the Premises, and all proceeds therefrom, and such property shall not be removed therefrom without consent of Landlord until all arrearages in Rent as well as any and all other sums of money then due to Landlord hereunder shall first have been paid and discharged and all the covenants, agreements and conditions hereof have been fully complied with and performed by Tenant. Upon the occurrence of an Event of Default by Tenant, Landlord may, in addition to any other remedies provided herein, enter upon the Premises and take possession of any and all goods, wares, equipment, fixtures, furniture, Improvements, accounts, contract rights, chattel paper and other personal property of Tenant situated on the Premises, without liability for trespass or conversation, and sell the same at public or private sale, with or without having such property at the sale, after giving Tenant reasonable notice of the time and place of any public sale or of the time after which any private sale is to be made, at which sale the Landlord or its assigns may purchase unless otherwise prohibited by law. Unless otherwise provided by law, and without intending to exclude any other manner of giving Tenant reasonable notice, the requirement of reasonable notice shall be met if such notice is given in the manner prescribed in this Lease at least five (5) days before the time of sale. The proceeds from any such disposition, less any and all expenses connected with the taking of possession, holding and selling of the property (including reasonable attorneys' fees and other expenses), shall be applied as a credit against the indebtedness secured by the security interest granted in this paragraph. Any surplus shall be paid to Tenant or as otherwise required by law, and the Tenant shall pay any deficiencies forthwith. Upon request by Landlord, Tenant agrees to execute and deliver to Landlord a financing statement in form sufficient to perfect the security interest of Landlord in the aforementioned property and proceeds thereof under the provisions of the Uniform Commercial Code in force in the State of Texas. The statutory lien for Rent is not hereby waived, the security interest herein granted being in addition and supplementary thereto.

**4.15.   Access by Landlord.**     Tenant shall permit Landlord or its agents or representatives to enter into and upon any part of the Premises at all reasonable hours to inspect same; to clean, to make repairs, alterations, or additions thereto, as Landlord may deem necessary or desirable; to show the Premises to prospective purchasers or tenants; or for any

other purpose deemed reasonable by Landlord; and Tenant shall not be entitled to any abatement or reduction of Rent by reason thereof.

**4.16.** **Surrender of Possession.** On the last day of the Lease Term, or on the sooner termination thereof, Tenant shall peaceably surrender the Premises in good condition and repair consistent with Tenant's duty to make repairs as herein provided. On or before the last day of the Lease Term, or the date of sooner termination thereof, Tenant shall, at its sole cost and expense, remove all of its property and trade fixtures and equipment from the Premises and repair any damage caused by such removal. All property not removed shall be deemed abandoned and Landlord shall not be liable for damage, theft, misappropriation or loss thereof and Landlord shall not be liable in any manner in respect thereto. In the event Landlord at its option, removes some or all of the abandoned personal property of Tenant, Tenant shall pay all costs and expenses of such removal. Tenant shall leave the Premises in good order, condition and repair. Tenant shall, as Additional Rent, reimburse Landlord upon demand for any expenses incurred by Landlord with respect to removal, transportation or storage of abandoned property and the expenses in restoring the Premises to good order condition and repair. In addition to the Landlord's other rights, Landlord may dispose of Tenant's property if the Tenant does not claim the property within 60 days after the date the property is stored or abandoned. Landlord shall deliver by certified mail to the Tenant at the Tenant's last known address a Notice stating that the Landlord may dispose of the Tenant's property if the Tenant does not claim the property within 60 days after the date the property is stored or abandoned. All Improvements, alterations, additions, installations and fixtures, other than Tenant's trade fixtures and equipment, which have been made or installed by either Landlord or Tenant upon the Premises shall remain the property of Landlord and shall be surrendered with the Premises as a part thereof, unless Tenant is required to remove same pursuant to the provisions of Paragraph 4.11 hereof. **IF THE PREMISES ARE NOT SURRENDERED AT THE END OF THE LEASE TERM OR SOONER TERMINATION THEREOF, IN ADDITION TO AND WITHOUT WAIVING ANY OTHER INDEMNITY CONTAINED IN THIS LEASE INCLUDING WITHOUT LIMITATION SECTION 7.02 BELOW, TENANT SHALL INDEMNIFY LANDLORD AGAINST LOSS OR LIABILITY RESULTING FROM DELAY BY TENANT IN SO SURRENDERING THE PREMISES, INCLUDING, WITHOUT LIMITATION, CLAIMS MADE BY ANY SUCCEEDING TENANTS FOUNDED ON SUCH DELAY AND ANY ATTORNEYS' FEES RESULTING THEREFROM.** Tenant shall promptly surrender all keys for the Premises to Landlord at the Leasing Office on FM 529 and shall inform Landlord of the combinations of any vaults, locks and safes left on the Premises.

## Article 5 – Mutual Covenants

**5.01.** **Condemnation, Loss or Damage.** If the Premises or any part thereof shall be taken or condemned for any public purpose (or conveyed in lieu or in settlement thereof) to such an extent as to render the remainder of the Premises not reasonably suitable for Tenant's use thereof, this Lease shall, at the option of either party, provided such option is exercised in writing

within thirty (30) days of the condemnation, forthwith cease and terminate, and all proceeds from any taking or condemnation of the Premises shall belong to and be paid to Landlord; provided, however, Tenant shall be entitled to any portion of any such proceeds attributed solely to any of Tenant's Property subject to such condemnation.   Notwithstanding anything herein to the contrary, Landlord shall have no liability to Tenant in the event of condemnation provided, however, Tenant shall have the right to take all actions necessary to seek reimbursement from the condemnor with respect to any damages suffered by Tenant.   If this Lease is not terminated, Landlord shall repair any damage resulting from such taking, to the extent and in the manner provided in Section 5.02 and Rental hereunder shall be abated to the extent the Premises are rendered untenantable (*i.e.*, unsuitable for Tenant's use thereof), provided Tenant is not using the Premises or any part thereof during the period of repair.   Rent and Additional Rent shall thereafter be adjusted on an equitable basis considering the areas of the Premises taken and remaining.   In the event the repair of damage resulting from such taking is not substantially completed within one hundred twenty (120) days after the date of the taking, then Tenant shall have the option to terminate this Lease upon written notice to Landlord.

### 5.02.   Fire and Other Casualty, Certain Repairs.

(a)   **Tenantable Within 120 Days.**   Tenant shall provide Landlord immediate written notice of any fire or other casualty occurring in or about the Premises or the Building.   If fire or other casualty shall render the whole or any material portion of the Premises untenantable, and the Premises can reasonably be expected to be made tenantable within one hundred twenty (120) days from the date of such event, then Landlord shall, provided Landlord receives the insurance proceeds from Tenant's insurer from the policies Tenant is required to maintain as set forth in Article 7 hereof, repair and restore the Premises and the Building to as near their condition prior to the fire or other casualty as is reasonably possible within such one hundred twenty (120) day period (subject to delays for causes beyond Landlord's reasonable control) and notify Tenant that it will be doing so, such notice to be mailed within thirty (30) days from the date Landlord receives written notice from Tenant of such damage or destruction, and this Lease shall remain in full force and effect, but the Rent for the period during which the Premises are untenantable shall be abated pro rata (based upon the portion of the Premises which is untenantable) to the extent Tenant does not have insurance coverage to pay such Rent.

(b)   Should Landlord elect to affect any repairs under Sections 5.01 or 5.02(a), Landlord shall only be obligated to restore or rebuild the Premises to a condition existing immediately prior to such damage.   In the event the Rent or any portion of the Rent is abated under Sections 5.01 or 5.02(a), the expiration date of the Term specified in Section 1.02 shall be extended for the period of such abatement.   In no event shall Landlord be obligated to repair or restore any special equipment or Improvements installed by Tenant at Tenant's expense. Anything herein contained to the contrary notwithstanding.   Landlord shall not be obligated to spend more than the net insurance proceeds received by Landlord on account of any fire or other casualty in order to repair or restore the Premises or the Building following such casualty.



(c)     **Not Tenantable Within 120 Days.**  If fire or other casualty shall render the whole or any material part of the Premises untenantable and the Premises cannot reasonably be expected to be made tenantable within one hundred twenty (120) days from the date of such event, then either Party, by notice in writing to the other mailed within thirty (30) days from the date of such damage or destruction, may terminate this Lease effective upon a date within thirty (30) days from the date of such notice; provided that Tenant shall only be entitled to terminate the Lease if it has complied fully with its obligations for the Insurance set forth in Article 7 hereof; pays Landlord the deductible portion of the insurance; and Tenants insurance company pays Landlord for the damage to the Premises.

(d)     **Building Substantially Damaged.**  In the event that more than fifty percent (50%) of the value of the Building is damaged or destroyed by fire or other casualty, and irrespective of whether damage or destruction can be made tenantable within one hundred twenty (120) days thereafter, then at Landlord's option, by written notice to Tenant, mailed within forty-five (45) days from the date of such damage or destruction, Landlord may terminate this Lease effective upon a date within thirty (30) days from the date of such notice to Tenant.

(e)     **Landlord's Right to Terminate Lease.**  If the Premises is damaged by fire or other casualty during the final twenty-four (24) months or the Lease Term, and Landlord makes a good faith determination that restoring the Premises would be uneconomical, then Landlord may terminate this Lease by giving Tenant written notice of its election to terminate, in which event all Rent shall be abated as of the date of such termination.

(f)     **Uninsured Casualty.**  If fire or other casualty shall render any portion of the Premises or any material portion of the Building untenantable and Tenant failed to obtain the Insurance Coverage required of Tenant in this Lease, notwithstanding anything herein to the contrary, Tenant shall not be entitled to terminate this Lease for any reason.

(g)     **Deductible Payments.**  If the Premises or the Building is damaged, and such damage is of the type required to be insured against under the property damage Insurance maintained by Tenant hereunder, Tenant shall pay Landlord the difference between the actual cost of repair and any insurance proceeds actually received by Landlord.

(h)     **Landlord's Repair Obligations.**  If fire or other casualty shall render the whole or any material part of the Premises untenantable and the Premises cannot reasonably be expected to be made tenantable within one hundred twenty (120) days from the date of such event and neither party hereto terminates this Lease pursuant to its rights herein or in the event that more than fifty percent (50%) of the value of the Building is damaged or destroyed by fire or other casualty, and Landlord does not terminate this Lease pursuant to its option granted herein, or in the event that fifty percent (50%) or less of the value of the Building is damaged or destroyed by fire or other casualty and neither the whole nor any material portion of the Premises is rendered untenantable, then Landlord shall repair and restore the Premises and the Building to as near their condition prior to the fire or other casualty as is reasonable possible with all due diligence and speed (subject to delays for causes beyond Landlord's reasonable control) and the

Rent for the period during which the Premises are untenantable shall be abated pro rata (based upon the portion of the Premises which is untenantable). In no event shall Landlord be obligated to repair or restore any special equipment or Improvements installed by Tenant at Tenant's expense. Anything herein contained to the contrary notwithstanding, Landlord shall not be obligated to spend more than the net Insurance proceeds received by Landlord on account of any fire or other casualty in order to repair or restore the Premises or the Building following such casualty.

      (i)    **Rent Apportionment.** In the event of a termination of this Lease pursuant to this Section 5, Rent shall be apportioned on a per diem basis and paid to the date of the fire or other casualty.

      **5.03.**    **Holding Over.** If Tenant should remain in possession of the Premises after the termination or expiration of the Term without the execution by Landlord and Tenant of a new lease, then Tenant shall be deemed to be occupying the Premises as a tenant from month to month, subject to all the covenants and obligations of this Lease, except that the monthly Rent for each holdover month or part of a month, shall be twice the full monthly Rent, including Additional Rent as defined herein, in effect on the last day for which Rent is due under this Lease immediately prior to such expiration or termination; but such holding over shall be at the option of Landlord and will not extend the Term. The Parties agree that any notice of termination made by Tenant during such month to month tenancy shall be delivered by Tenant to Landlord in writing, and the tenancy shall terminate on whichever of the following days is the later: (1) the day given in the notice for termination; or (2) one full monthly Rental Period after the day on which the notice is received by Landlord. Tenant shall be deemed to be occupying the Premises without claim of right and Tenant shall pay Landlord in addition to the Double Rent as provided for herein all costs arising out of loss or liability resulting from Delay by Tenant in so surrendering the Premises as provided in this Lease and in addition to and without waiving any other indemnity contained in this Lease including without limitation Section 7.02 below, Tenant shall indemnify and hold safe and harmless the Landlord, Landlord's agents and employees from any loss, liability, claims, suits, costs, expenses, including without limitation attorney's fees and damages, both real and alleged arising out of any such Delay by Tenant in so surrendering the Premises as above provided.

      **5.04.**    **Assignment by Landlord.** Landlord shall have the right to transfer and assign, in whole or in part, all its rights and obligations hereunder in and to the Lease or the Premises, and upon any such transfer or assignment, no further liability or obligation shall thereafter accrue against Landlord hereunder.

      **5.05.**    **Recourse Limitation.** Tenant expressly waives any lien it may have against Landlord, and Tenant specifically agrees to look solely to Landlord's interest in the Premises for the recovery of any judgment from Landlord, it being agreed that Landlord shall never be personally liable for any such judgment. The provision contained in the foregoing sentence shall not limit any right that Tenant might otherwise have to obtain injunctive relief against Landlord.



**5.06.** <u>Control of Premises, Common Areas and Parking Facilities by Landlord.</u> All common facilities furnished by Landlord to tenants in the Industrial Park of which the Premises is a part of, including all common parking areas, truck way or ways, loading areas, pedestrian walkways, ramps, streets and roads, landscaped areas, stairways, and other areas and Improvements provided by Landlord for the general use, in common, of all Tenants in the Industrial Park, and located outside the Premises shall be at all times subject to the exclusive control and management of Landlord. Landlord shall have the right from time to time to establish, modify, and enforce reasonable rules and regulations with respect to the Industrial Park. The Premises, which are the subject of this Lease, are at all times, during the Term of this Lease, subject to the exclusive control and management of Tenant. Provided Tenant complies with all terms and conditions of this Lease.

**5.07.** <u>Independent Obligations.</u> The obligation of Tenant to pay all Rent and Additional Rent, and other sums hereunder provided to be paid by Tenant and the obligation of Tenant to perform Tenant's other covenants and duties hereunder constitute independent, unconditional obligations to be performed at all times provided for hereunder, save and except only when an abatement thereof or reduction therein is hereinabove expressly provided for and not otherwise. Tenant waives and relinquishes all rights which Tenant might have to claim any nature of lien against or withhold, or deduct from or offset against any Rent and other sums provided hereunder to be paid to Landlord by Tenant.

## Article 6 – <u>Default and Remedies</u>

**6.01.** <u>Default by Tenant.</u> The occurrence of any one or more of the following events (in this Section sometimes called **"Event of Default"**) shall constitute a Default and breach of this Lease by Tenant:

(a)     Failure of Tenant to pay any Rent or Additional Rent payable under this Lease or fails to pay any other monetary obligation required to be paid by Tenant within five (5) days after receiving written notice from Landlord notifying Tenant of Tenant's failure to pay such amount.

(b)     Failure of Tenant to occupy and conduct business in the Premises for a period of fifteen (15) consecutive days, or the abandonment or vacating of the Premises or any significant portion thereof.

(c)     Tenant shall fail to take possession of the Premises when Landlord notifies Tenant that the same are ready for occupancy.

(d)     The filing or execution or occurrence of a petition in bankruptcy or other insolvency Proceeding by or against Tenant or any guarantor of Tenant's obligations hereunder; or petition or answer seeking relief under any provision of the Bankruptcy Act; or an assignment



for the benefit of creditors or composition; or a petition or other proceeding by or against the Tenant for the appointment of a trustee, receiver or liquidator of Tenant or any of Tenant's property; or a proceeding by any governmental authority for the dissolution or liquidation of Tenant or any guarantor of Tenant.

(e)     If Tenant fails to perform any of Tenant's non-monetary obligations under this Lease for a period of thirty (30) days after written notice from Landlord; provided that if more time is required to complete such performance, Tenant shall not be in Default if Tenant commences such performance within the 30-day period and thereafter diligently pursues its completion. However, Landlord shall not be required to give such notice if Tenant's failure to perform constitutes a non-curable breach of this Lease. The notice required by this Subsection is intended to satisfy any and all notice requirements imposed by law on Landlord and is not in addition to any such requirement.

(f)     If Tenant, by operation of law or otherwise, violates the provisions of Paragraph 4.08 hereof relating to assignment, sublease, mortgage, or other transfer of Tenant's interest in this Lease or in the Premises or in the income arising therefrom.

(g)     If Landlord discovers that any financial statement, warranty, representation or other information given to Landlord by Tenant, any successor in interest of Tenant or any guarantor of Tenant's obligation hereunder and any of them in connection with this Lease was materially false or misleading when made or furnished.

(h)     Tenant, by operation of law or otherwise, violates the provisions hereof relating to compliance with environmental laws.

(i)     If (i) Tenant makes a general assignment or general arrangement for the benefit of Creditors; (ii) a petition for adjudication of bankruptcy or for reorganization or rearrangement is filed by or against Tenant and is not dismissed within thirty (30) days; (iii) if a trustee or receiver is appointed to take possession of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease and possession is not restored to Tenant within thirty (30) days; or (iv) if substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease is subjected to attachment, execution or other judicial or non-judicial seizure which is not discharged within thirty (30) days. If a court of competent jurisdiction determines that any of the acts described in this subsection does not constitute an Event of Default and a trustee is appointed to take possession (or if Tenant remains a debtor in possession) and such trustee or Tenant transfers Tenant's interest hereunder, then Landlord shall receive, as Additional Rent, the difference between the Rent (or any other consideration) paid in connection with such assignment or sublease and the Rent payable by Tenant hereunder. As used in this subsection, the term "Tenant" shall also mean any guarantor of Tenant's obligations under this Lease. If any such Event of Default shall occur, Landlord, at any time during the continuance of any such Event of Default, may give written notice to Tenant stating that this Lease shall expire and terminate on the date specified in such notice, and upon the date specified in such notice this Lease, and all right of Tenant under this Lease, including all rights of renewal whether exercised



or not, shall expire and terminate, or in the alternative or in addition to the foregoing remedy, Landlord may assert and have the benefit of any other remedy allowed herein, at law or in equity.

(j)     The occurrence of any other event herein provided to be an Event of Default.

**6.02.  Late Payments.**  Unless otherwise set forth specifically herein, in addition to the Late Charge provided for in Paragraph 2.08 hereof, all late payments of Rent, Additional Rent, or other amounts or any portion thereof owed by Tenant to Landlord, its agents, contractors or subcontractors, shall bear interest from the date of invoice or the dates such amount come due, whichever date is first, until paid, at the rate of ten percent (10%) per annum or the highest lawful rate allowed by the State of Texas, whichever sum is less.

**6.03.  Landlord Remedies.**  Upon the occurrence of an Event of Default by Tenant, and at any time thereafter, with or without notice or demand and without limiting Landlord in the exercise of any right which Landlord may have, Landlord shall be entitled to the rights and remedies set forth below.

(a)     **Termination of Possession.**  Enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, together with any property that may be found within the Premises, by force if necessary without being liable for prosecution or any claim for damages therefor.  Landlord need not give Tenant any written notice whatsoever of Landlord's intent to take possession of the Premises and expel or remove Tenant, and Landlord shall have the right to change the locks on any door of the Premises without notifying Tenant of the name, address or telephone number of an individual or company from whom a new key may be obtained, nor shall Landlord have any obligation to provide a new key to Tenant until such time as all Events of Default have been cured and Tenant has provided to Landlord additional security for or further assurances of Tenant's future performance of all Tenant's obligations arising under this Lease, such security and assurances to be satisfactory to Landlord in the exercise of Landlord's sole and absolute discretion.  It is agreed that if Tenant abandons or vacates the Premises, Landlord may take such steps as Landlord deems necessary, appropriate or desirable (in the exercise of Landlord's sole and absolute discretion) to protect them from deterioration.  Landlord may continue to demand from Tenant the monthly rentals and other charges provided in this Lease, during such time as Landlord is attempting to find a new Tenant in mitigation of its damages.  Any effort by Landlord to mitigate its damages shall not be deemed as an acceptance of Tenant's surrender of the Premises nor shall such action constitute a termination of this Lease unless Landlord expressly notifies Tenant of such acceptance or termination in writing pursuant to Paragraph 6.03(b).  Tenant hereby acknowledging that Landlord shall otherwise be reletting as Tenant's agent and Tenant furthermore hereby agrees to pay to Landlord on demand any deficiency that may arise between the monthly rentals and other charges provided in this Lease and that actually collected by Landlord.  Upon such reletting, Tenant shall immediately be liable to Landlord, in addition to any indebtedness other than Rent due hereunder, for the cost and expenses of such reletting and of such alterations and repairs incurred by Landlord (including those costs and

expenses set forth in subsection (c) below).   At the option of Landlord, Rents received by Landlord by such reletting shall be applied as follows:

      (i)    First, to the payment of any indebtedness, other than Rent, due hereunder from Tenant to Landlord;

      (ii)    Second, to the payment of any of the cost or expense of the reletting and of such alterations and repairs;

      (iii)    Third, to the payment of all past due Rent; and

      (iv)    Fourth, to the payment of the Base Rent and other charges, as the same may become due and payable.

If the Rent received by Landlord by such reletting for any month shall be less than Rent owed by Tenant under this Lease for such month, Tenant shall pay the deficiency to Landlord within ten (10) days after Landlord has sent Tenant written demand therefor.  If Tenant fails to pay this sum within said 10-day period, interest shall run on such amount at the rate of 10% per annum or at the highest lawful rate of interest from the date of such written demand until said sum is paid in full, whichever sum is less.  It is further agreed in this regard in the Event of any Default described in Paragraph 6.03(b), Landlord shall have the right to enter upon the Premises without being liable for prosecution or any claim for damages therefor, do whatever Tenant is obligated to do under the terms of this Lease; and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in thus effecting compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for any damages resulting to the Tenant from such action.

      (b)    **Termination of Lease.**  Landlord may terminate this Lease only by written notice to Tenant, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which Landlord may have for possession or arrearage in Rent (including any interest which may have accrued pursuant to the terms of this Lease), enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor.  Tenant herby waives any statutory requirement of prior written notice for filing eviction or damage suits for nonpayment of Rent.  In addition, Tenant agrees to pay to Landlord, on demand, the amount of all loss and damage which Landlord may suffer by reason of any termination affected pursuant to this Subsection (b), said loss and damage to be determined by either of the following alternative measures of damages.

      (i)    Until Landlord is able, through reasonable efforts, the nature of which efforts shall be at the reasonable discretion of Landlord, to relet the Premises, Tenant shall pay to Landlord on or before the first day of each calendar month, the monthly Rent and other



charges provided in this Lease. After the Premises have been relet by Landlord, Tenant shall pay to Landlord on the twentieth (20th) day of each calendar month the difference between the monthly Rent and other charges provided in this Lease for the preceding calendar month and that amount actually collected by Landlord for such month. If it is necessary for Landlord to bring suit in order to collect any deficiency, Landlord shall have a right to allow such deficiencies to accumulate and to bring an action on several or all of the accrued deficiencies at one time. Any such suit shall not prejudice in any way the right of Landlord to bring a similar action for any subsequent deficiency or deficiencies. Any amount collected by Landlord from subsequent Lessees for any calendar month, in excess of the monthly Rentals and other charges provided in this Lease, shall be credited to Tenant in reduction of Tenant's liability for any calendar month for which the amount collected by Landlord will be less than the monthly rentals and other charges provided in this Lease; but Tenant shall have no right to such excess other than the above described credit.

(ii)    When Landlord desires, Landlord may demand a final settlement. Upon demand for a final settlement, Landlord shall have right to, and Tenant hereby agrees to pay all sums owed Landlord up to the last day of the month in which Tenant completely vacated the Premises together with the difference between the total of all monthly rentals and other charges provided in this Lease from the date Tenant completely vacated the Premises to the Lease Termination Date as set forth in the Lease, the reasonable rental value of the Premises for such a period, such difference to be discounted to present value at a rate of six percent (6%) per annum.

If Landlord elects to exercise the remedy prescribed in subsection (a) above, this election shall in no way prejudice Landlord's right at any time thereafter to cancel said election in favor of the remedy prescribed in Subsection (b) above, provided that at the time of such cancellation Tenant is still in Default. Similarly, if Landlord elects to compute damages in the manner prescribed by Subsection (b)(i) above, this election shall in no way prejudice Landlord's right at any time thereafter to demand a final settlement in accordance with Subsection (b)(ii) above. Pursuit of any of the above remedies shall not preclude pursuit of any other remedies prescribed in other sections of this Lease and any other remedies provided by law. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an Event of Default shall not be deemed or construed to constitute a waiver of such Default.

(c)    **Repossession Expenses.** It is further agreed that, in addition to payments required pursuant to Subsections 6.02 and (b) above, Tenant shall compensate Landlord for all

expenses incurred by Landlord in repossession (including, among other expenses, any increase in Insurance Premiums caused by the vacancy of the Premiums), all expenses incurred by Landlord in reletting (including among other expenses, repairs, remodeling, replacements, advertisements and brokerage fees), all concessions granted to a new lessee upon reletting (including among other concessions, renewal options), all losses incurred by Landlord as a direct or indirect result of Tenant's Default (including, among other losses, any adverse reaction by Landlord's mortgagee or by other lessees or potential lessees of the Building) and a reasonable allowance for Landlord's administrative efforts, salaries and overhead attributable directly or indirectly to Tenant's Default and Landlord's pursuit of rights and remedies provided herein and under applicable law.

(d)     **Injunction.**  Landlord may restrain or enjoin any breach or threatened breach of any covenant, duty or obligation of Tenant herein contained without the necessity of proving the inadequacy of any legal remedy or irreparable harm.  The remedies of Landlord hereunder shall be deemed cumulative and not exclusive of each other.

**6.04.   Remedies Cumulative; No Waiver.**   All rights, options and remedies of Landlord contained in this Lease shall be construed and held to be cumulative, and no one of them shall be exclusive of the other, and Landlord shall have the right to pursue any one or all of such remedies or any other remedy of relief which may be provided by law whether or not stated in this Lease.  No waiver by Landlord of a breach of any of the terms, covenants or conditions of this Lease by Tenant shall be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, covenant or condition therein contained.  No waiver of any Default of Tenant hereunder shall be implied from any omission by Landlord to take any action on account of such Default if such Default persists or is repeated, and no express waiver shall affect Default other than as specified in said waiver.  The consent or approval by Landlord to or of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent to or approval of any subsequent similar acts by Tenant.  It is expressly agreed that Landlord shall have no obligation or duty to mitigate damages and Tenant hereby waives and relinquishes any right or claim for mitigation of damages.

**6.05.   Remedies Cumulative.**  Landlord may restrain or enjoin any breach or threatened breach of any covenant, duty or obligation of Tenant herein contained without the necessity of proving the inadequacy of any legal remedy or irreparable harm.  The remedies of Landlord hereunder shall be deemed cumulative and no remedy of Landlord, whether exercised by Landlord or not, shall be deemed to be in exclusion of any other.

**6.06.   Default by Landlord.**  Landlord shall not be in Default unless Landlord fails to perform obligations required of Landlord hereunder after at least thirty (30) days' written notice by Tenant after Landlord's time to cure has expired, which notice shall specify with particularity in what manner Landlord has failed to perform its obligations.

**6.07.   Legal Costs.**  Tenant shall reimburse Landlord, upon demand, for any costs and expenses incurred by Landlord in connection with any breach or Default of Tenant under this

Lease, whether or not suit is commenced or judgment entered or any documents Tenant requests Landlord to sign for the benefit of Tenant such as Landlord's Waivers, etc. Such costs shall include, but not be limited to, legal fees and costs incurred for the negotiation of a settlement, enforcement of rights or otherwise. Furthermore, if any action for breach of or to enforce the provisions of this Lease is commenced, the court in such action shall award to Landlord a reasonable sum as attorneys' fees and costs. In addition to and without waiving any other indemnity contained in this Lease including without limitation Section 7.02 below, Tenant shall also indemnify Landlord against and hold Landlord harmless from all costs, expenses, demands and liability incurred by Landlord if Landlord becomes or is made a party to any claim or action (a) instituted by Tenant or by any third party against Tenant; (b) for foreclosure of any lien for labor or material furnished to or for Tenant or such other person; (c) otherwise arising out of or resulting from any act or transaction of Tenant or such other person; or (d) necessary to protect Landlord's interest under this Lease in a bankruptcy proceeding, or other proceeding under Title 11 of the United States Code, as amended. Tenant shall defend Landlord against any such claim or action at Tenant's expense with counsel reasonably acceptable to Landlord or, at Landlord's election, Tenant shall reimburse Landlord for any legal fees or costs incurred by Landlord in any such claim or action. In addition, Tenant shall pay Landlord's reasonable attorneys' fees incurred in connection with Tenant's request for Landlord's consent in connection with any act which Tenant proposed to do and which requires Landlord's consent.

## Article 7 – <u>Insurance Subrogation, Liability, Indemnity and Waiver</u>

**7.01.** <u>**Tenant's Insurance**</u>. Effective as of the Commencement Date of this Lease and continuing throughout the Term, as extended, Tenant, at its sole cost and expense, shall carry and maintain insurance coverage set forth below, naming Landlord as an "Additional Insured" under such Policies with a deductible not greater than $5,000.00.

    (a)    <u>**Property Insurance.**</u>

        (1)    Insurance in the amount of at least $824,175.00, on the Improvements situated on the Premises, whether made by Tenant or furnished by Landlord, including but not limited to all fixtures, all mechanical, electrical and plumbing systems, appliances, equipment cranes, hoists and other personal property incorporated into or otherwise attached to the Land or Improvements and all other portions of the Premises under a "Causes of Loss-Special Form" (formerly "all-risk") ISO CP 10 30 04 02 or its equivalent insurance (hereinafter referred to as **"All Risks"**) including, without limitation, coverage for loss or damage by theft, HVAC and equipment, law and ordinance, sewer back-up, glass, windstorm and collapse coverage including vandalism and malicious mischief endorsements; such insurance to be written with full replacement coverage (the **"Replacement Value"**, i.e., in an amount equal to the greater of (1) 100% of the full replacement cost of the Improvements and such fixtures, mechanical/electrical and plumbing systems, appliances, equipment and other personal property incorporated into or permanently attached to the Land or Improvements and any alterations or betterments thereto and all other portions of the Property or (2) an amount sufficient to prevent Tenant from becoming an co-insurer of any loss under the applicable policy. The insurance company's

determination of the amount of coverage required in clause (1) above shall be binding and conclusive on Landlord and Tenant for purposes of the coverage required. A stipulated value or agreed amount endorsement deleting the co-insurance provision of the policy shall be provided with such insurance.

(2)     All Risks Insurance covering the full replacement cost of all trade fixtures, and appliances, equipment and personal property provided by Landlord not incorporated into or otherwise permanently affixed to the Land or Improvements on the Property.

(3)     The Replacement Value shall include the cost of debris removal and the value of grading, paving, landscaping, architects, and development fees.

(4)     In the event that Tenant elects to construct additional improvements on the Premises during the Term hereof as permitted herein, from the commencement date of such construction through final completion of such additional improvements, Tenant at its sole expense shall maintain or cause to be maintained builder's risk insurance, and shall cause its contractors to maintain workers compensation insurance. Tenant shall furnish to Landlord evidence of coverage and any renewals or replacements of such insurance and to name Landlord as additional insured under the policy.

(b)     **Commercial General Liability Insurance.**     Commercial general liability insurance with respect to the Property and the operations related thereto, whether conducted on or off the Property, against liability for personal injury, including bodily injury and death, and property damage: Such comprehensive general liability insurance shall be on an occurrence basis, on an ISO form CG 00 01 12 04, or a substitute providing equivalent coverage, and specifically shall include:

(1)     Contractual Liability to cover Tenant's obligation to indemnify Landlord as required in this Lease (including tort liability of another assumed in a business contract);

(2)     Water damage liability; and

(3)     Coverage for sudden and accidental releases of Hazardous Materials

All such commercial general liability insurance as specified above shall be written for a combined single limit of not less than One Million Dollars ($1,000,000.00) (and, if the use and occupancy of the Property include any activity or matter that is or may be excluded from coverage under a commercial general liability policy, Tenant shall obtain such endorsements to the commercial general liability policy or otherwise obtain insurance to insure all liability arising from such activity or matter in such amounts as Landlord may reasonably require). Such limit shall be subject to reasonable increase from time to time in accordance with the limits then being customarily carried on properties and buildings of similar age and construction and similarly situated as the Property.

(c)     **Insurance Providers; Insurance Certificates.** All insurance provided for in this Section 7 shall be in such form and shall be issued by such responsible insurance companies



licensed to do business in the State of Texas. All insurance required to be maintained by Tenant must be issued by insurers having a Best's Rating of A or better, and a Best's Financial Size Category of VIII, or better, and/or Standard & Poor Insurance Solvency Review A-, or better (or the equivalent of such ratings), which insurers shall be deemed a responsible company and acceptable to Landlord. Upon execution of this Lease, and thereafter, not less than 30 days prior to the expiration dates of the expiring policies required pursuant to this Section 7, certificates of insurance and certified copies of insurance policies or renewal certificates, as the case may be, bearing notations evidencing the payment in full of premiums or accompanied by other evidence reasonably satisfactory to Landlord of such payment, shall be delivered by Tenant to Landlord. However, no review or approval of any insurance certificate or policy by Landlord shall derogate from or diminish Landlord's rights or Tenant's obligations hereunder. Additionally, failure of Landlord to demand such certificates or other evidence of full compliance with these insurance requirements or failure of Landlord to identify a deficiency from evidence that is provided shall not be construed as a waiver of Tenant's obligation to maintain such insurance. Certificates must be in the following form:

**A.** Liability insurance: ACORD™ Form 25 (2010/05) *Certificates of Liability Insurance* for liability coverages.

**B.** Property Insurance: ACORD™ Form 28 (2009/12) *Evidence of Commercial Property Insurance* for property coverages.

**Certificate Requirements.** All certificates must:

(1) **Insured.** State the insured's name and address.

(2) **Insurer.** State the name of each insurance company affording each coverage, policy number of each coverage, policy dates of each coverage, all coverage limits and sublimits, if any, by type of coverage, and show the signature of the authorized representative signing the certificate on behalf of the insurer.

(3) **Additional Insured Status and Subrogation Waiver.** Specify the additional insured status as required by these specifications using ISO form CG 20 11 01 96 or equivalent form listing Landlord as additional insured. No exclusion for the acts or omissions of the additional insured. Specify the waiver of subrogation required by these specifications using ISO form CG 29 88 10 93 Waiver of Transfer of Rights of Recovery Against Others Endorsement to include a waiver of subrogation by insurer as to Landlord. Additionally, the personal injury contractual liability exclusion shall be deleted.

(4) **Primary Status.** State the primary and non-contributing status required herein.

(5) **Law or Ordinance Endorsement. State that Law or Ordinance coverage has been purchased using ISO CP 04 05 (or similar) form for coverage.**

(5) **Deductibles and Self-Insured Retentions Stated.** State the amounts of all deductibles and self-insured retentions.

(6) **Copy of Endorsements and Policy Declaration Page.** Be accompanied by certified copies of all required endorsements and policy declaration page reflecting issuance of the endorsements.



**(7) Notices.** Be accompanied by insurer certified copy of notice of cancellation endorsement providing that 30 days' notice of cancellation [and material change] will be sent to the certificate holder.

**(8) Certificate Holder.** Be addressed to the Landlord as the certificate holder and show Landlord's correct address.

**(9) Producer.** State the producer of the certificate with correct address and phone number listed.

**(10) Authorized Representative.** Be executed by a duly authorized representative of the insurers.

(d)    **Named Insureds.** The policies of insurance provided for in Section 7.01(a) shall name Landlord, as an additional insured and loss payee, as their respective interest may appear, using ISO CP 12 18 06 07 "Loss Payable Provisions, Optional Clause F Building Owner Loss Payable Clause" or equivalent. Landlord shall be named as an additional insured, under the policy provided for in Section 7.01(b), using form CP 12 19 06 07 "Additional Insured -- Building Owner" endorsement or equivalent to designate Landlord as "Named Insured." All other policies of insurance provided for in Section 7 shall name any Landlord and Tenant as the insured as their respective interest may appear.

(e)    **Compliance with and No Violation of Insurance.** Tenant shall not violate or permit to be violated any of the conditions, provisions or requirements of any insurance policy required by this Section 7, and Tenant shall perform, satisfy and comply with or cause to be performed, satisfied an complied with the conditions, provisions and requirements of the insurance policies and the companies writing such policies so that, at all times, companies reasonably acceptable to Landlord provide the insurance required by this Section 7.

(f)    **Additional Insurance Provisions.** Each policy of insurance required to be carried pursuant to the provisions of Section 7 shall contain (1) a provision that no act or omission of Landlord or Tenant shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, (2) an agreement by the insurer that such policy shall not be canceled, modified or denied renewal without at least 30 days' prior written notice to Landlord, (3) an agreement that if cancellation is due to non-payment of premiums, the insurer will so specify in the notice given in clause (2) above and will reinstate the policy upon payment of the premiums by Landlord, and (4) a waiver of subrogation by the insurer with respect to any and all claims including but not limited to those against Landlord. If Tenant fails to comply with the insurance requirements contained herein or to deliver to Landlord the certificates or evidence of coverage required herein, and such failure is not cured within five (5) days after written notice to Tenant, Landlord, in addition to any other remedy available pursuant to this Lease or otherwise, may but shall not be obligated to obtain such insurance and Tenant shall pay to Landlord on demand the premium costs thereof, plus an administrative fee of 15% of such cost.

(g)    **Nature of Tenant's Insurance.** Tenant's insurance shall be primary and non-contributory to any policy which may be issued to Landlord (without implying any obligation for Landlord to procure any such policy) when such policy provides duplicate or similar coverage, and in such circumstance Landlord's policy will be excess to Tenant's policy.

(h)    <u>No Subrogation; Waiver of Property Claims.</u>  Tenant waives any claim it might have against Landlord for any damage to or theft, destruction, loss, or loss of use of any of the Property, to the extent (including applicable deductibles and exclusions) the same is insured against under any insurance policy of the types described in this Section 7 that covers the Property or business, or is required to be insured against under the terms hereof, **regardless of whether the negligence of the Landlord, whether in whole or in part, caused such Loss (defined below).**  Additionally, Tenant waives any claim it may have against Landlord for any Loss to the extent such Loss is caused by a terrorist act.  Tenant shall cause its insurance carrier to endorse all applicable policies waiving the carrier's rights of recovery under subrogation or otherwise against Landlord.  Notwithstanding any provision in this Lease to the contrary, Landlord, its agents, employees and contractors shall not be liable to Tenant or to any Tenant Invitee for (and Tenant hereby releases Landlord and its servants, agents, contractors, employees and invitees from any claim or responsibility for) any damage to or destruction, loss, or loss of use, or theft of any property of Tenant located in or about the Property, caused by casualty, theft, fire, third parties or any other matter or cause, **regardless of whether the negligence of Landlord caused such loss in whole or in part.**  Tenant acknowledges that Landlord shall not carry insurance on, and shall not be responsible for damage to the Premises or any property of any Tenant located in or about the Property.

(i)    <u>Third Party Waiver.</u>  Except for any of the claims, rights of recovery, and causes of action that Landlord has released and waived pursuant to Section 7, if any, **TENANT HEREBY RELEASES, INDEMNIFIES AND AGREES TO DEFEND AND HOLD HARMLESS, LANDLORD AND ITS RELATED COMPANIES AND AGENTS TOGETHER WITH THEIR DIRECTORS, PARTNERS, OFFICERS, EMPLOYEES, ATTORNEYS, INVITEES, CONTRACTORS AND SUBCONTRACTORS, FROM ALL CLAIMS, LOSSES, COSTS, DAMAGES OR EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEY'S FEES, COSTS OF INVESTIGATION, EXPERT FEES, AND ACTIONS OR DAMAGES OF ANY KIND, WHETHER SOUNDING IN TORT, CONTRACT OR EQUITY, RESULTING OR ARISING FROM ANY AND ALL INJURIES OR DEATH OF ANY PERSON OR DAMAGE TO ANY PROPERTY OR OTHER DAMAGES OF ANY KIND OR NATURE OCCURRING DURING THE TERM OF THIS LEASE CAUSED BY OR ALLEGED TO HAVE BEEN CAUSED BY ANY ACT OR OMISSION OF TENANT, ITS AGENTS, INVITEES, GUESTS, ANY PARTIES CONTRACTING WITH OR VISITING TENANT OR ANY OTHER PERSON OR ENTITY RELATING TO THE PREMISES. FURTHER, TENANT HEREBY ASSUMES ALL RISK OF DAMAGE TO ALL PROPERTY OR INJURY TO PERSONS ON OR ABOUT THE PREMISES, AND TENANT HEREBY WAIVES ALL CLAIMS IN RESPECT THEREOF AGAINST LANDLORD, SAVE AND EXCEPT FOR ANY CLAIM ARISING OUT OF LANDLORD'S SOLE GROSS NEGLIGENCE AN/OR SOLE WILLFUL MISCONDUCT. IT IS THE EXPRESSED INTENTION OF THE PARTIES HERETO THAT THE INDEMNITY PROVISIONS IN THIS LEASE ARE INTENDED TO PROTECT LANDLORD FROM THE CONSEQUENCES OF ITS OWN NEGLIGENCE.**

(j)     **Third Party Tenant Waiver**. Tenant and Landlord agree that each shall not be responsible or liable to the other, or to their agents, customers invitees, for bodily injury (fatal or non-fatal) or property damage occasioned by the acts or omissions of any other Tenant or such Tenant's employees, agents, contractors, customers or invitees on or about the Premises, or for any loss or damage to any property or persons occasioned by theft, fire, act of God, public enemy, injunction, riot, strike, insurrection, war, court order, requisition, or order of governmental body or authority, or any other cause beyond the control of either Party, or for any inconvenience or loss to either Party in connection with any of the repair, maintenance, damage, destruction, restoration or replacement referred to in this Lease.

7.02.   **Indemnity**.   TENANT SHALL INDEMNIFY AND HOLD HARMLESS LANDLORD, ITS PARTNERS AND ITS RELATED COMPANIES, TOGETHER WITH THEIR AGENTS, SERVANTS, DIRECTORS, OFFICERS, INVITEES, PARTNERS, VENTURERS, CONTRACTORS, SUBCONTRACTORS AND EMPLOYEES FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, COSTS, DAMAGES OF ANY KIND OR CHARACTER, INCLUDING, BUT NOT LIMITED TO, COURT COSTS, ATTORNEY'S FEES, COSTS OF INVESTIGATION, EXPERT FEES, AND ACTIONS OF ANY KIND, WHETHER SOUNDING IN TORT, CONTRACT OR EQUITY, ARISING OR ALLEGED TO ARISE BY REASON OF INJURY TO OR DEATH OF ANY PERSON OR DAMAGE TO OR LOSS OF PROPERTY OCCURRING ON, IN OR ABOUT THE PREMISES OR THE INDUSTRIAL PARK OR BY REASON OF ANY CLAIM OF WHATSOEVER NATURE OF ANY PERSON OR PARTY, INCLUDING OTHER TENANTS, IN THE INDUSTRIAL PARK OCCASIONED OR ALLEGED TO BE OCCASIONED IN WHOLE OR IN PART BY ANY ACT OR OMISSION ON THE PART OF TENANT OR ANY EMPLOYEE, DIRECTOR, OFFICER, SERVANT, AGENT, CONTRACTOR, INVITEE, GUEST, ASSIGNEE, OR SUBTENANT OF TENANT, OR BY BREACH, VIOLATION OF NONPERFORMANCE OF ANY COVENANT OF TENANT UNDER THIS LEASE. IF ANY ACTION OR PROCEEDING SHALL BE BROUGHT BY OR AGAINST LANDLORD IN CONNECTION WITH ANY SUCH LIABILITY OR CLAIM, TENANT, ON NOTICE FROM LANDLORD SHALL DEFEND SUCH ACTION OR PROCEEDING, AT TENANT'S EXPENSE, BY OR THROUGH AN ATTORNEY REASONABLY SATISFACTORY TO LANDLORD. THE PROVISIONS OF THIS SECTION 7.02 SHALL APPLY TO ALL ACTIVITIES OF TENANT OR ITS EMPLOYEES AND INVITEES WITH RESPECT TO THE PREMISES OR INDUSTRIAL PARK, WHETHER OCCURRING BEFORE OR AFTER THE COMMENCEMENT DATE AND BEFORE OR AFTER THE EXPIRATION OR TERMINATION OF THIS LEASE. IT IS THE EXPRESSED INTENTION OF THE PARTIES HERETO THAT THE INDEMNITY PROVISIONS IN THIS LEASE ARE INTENEDED TO PROTECT LANDLORD FROM THE CONSEQUENCES OF ITS OWN NEGLIGENCE.

7.03.   **Waiver of Liability**.    LANDLORD,   ITS   AGENTS,   SERVANTS, DIRECTORS,   EMPLOYEES,   INVITEES,   PARTNERS,   VENTURERS, CONTRACTORS, AND EMPLOYEES SHALL NOT BE LIABLE FOR ANY INJURY

TO OR DEATH OF PERSONS OR FOR ANY COMPENSATORY OR CONSEQUENTIAL DAMAGES, LOSS OF PROFITS, BUSINESS INTERRUPTION OR FOR ANY LOSS OR DAMAGE TO PROPERTY OF TENANT OR OF OTHERS, INCLUDING BUT NOT LIMITED TO ANY DAMAGE OR LOSS, OCCASIONED BY CASUALTY, THEFT, OR ANY OTHER CAUSE OF WHATSOEVER NATURE, WHETHER SOUNDING IN CONTRACT, TORT OR IN EQUITY, UNLESS CAUSED BY THE SOLE WILLFUL MISCONDUCT OR SOLE GROSS NEGLIGENCE OF LANDLORD. IN NO EVENT SHALL LANDLORD BE LIABLE AS THE RESULT OF THE ACTS OR OMISSIONS OF TENANT OR ANY OF ITS INVITEES OR EMPLOYEES. ALL PERSONAL PROPERTY ON THE PREMISES SHALL BE AT THE RISK OF THE TENANT ONLY AND LANDLORD SHALL NOT BE LIABLE FOR ANY DAMAGE THERETO OR THEFT THEREOF, UNLESS CAUSED BY THE SOLE GROSS NEGLIGENCE OR SOLE WILLFUL MISCONDUCT OF LANDLORD, ITS AGENTS, SERVANTS, DIRECTORS, OFFICERS, PARTNERS, VENTURERS, OR EMPLOYEES.

**7.04. Tenant's Failure to Insure.** In the event Tenant fails to provide Landlord with evidence of Insurance required under this Section, Landlord may, but shall not be obligated to, without further demand upon Tenant, and without waiving or releasing Tenant from any obligation contained in this Lease, obtain such Insurance and Tenant agrees to repay, upon demand, all such sums incurred by Landlord in effecting such Insurance. All such sums shall become a part of the Additional Rent payable hereunder, but no such payment by Landlord shall relieve Tenant from any Default under this Lease.

**7.05 Prohibited Endorsements.** All insurance coverages required to be maintained by Tenant are not permitted to have the following exclusions/limitations (or their equivalent):

(a) Contractual Liability Limitation, CG 21 39 or its equivalent.
(b) Amendment Of Insured Contract Definition, CG 24 26 or its equivalent.
(c) Limitation of Coverage to Designated Premises or Project, CG 21 44.
(d) Any endorsement modifying or deleting the exception to the Employer's Liability exclusion.
(e) Any "Insured vs. Insured" exclusion.
(f) Any type of punitive, exemplary or multiplied damages exclusion.

### Article 8 – Miscellaneous

**8.01. Venue, Governing Law.** This Lease shall be governed by the laws of the State of Texas. All monetary and other obligations of Landlord and Tenant are performable exclusively in Harris County, Texas.

**8.02. Captions.** Article and Paragraph captions are not a part hereof.

**8.03.   Recording.** Tenant shall not record this Lease.  Any such recordation shall be a breach under this Lease.

**8.04.   Notice.**  Any notice which may or shall be given under the terms of this Lease shall be in writing and shall be either delivered by hand, facsimile transmission or sent by United States Registered or Certified Mail, postage prepaid, if for Landlord to:   529 49, Ltd., Northwoods Industrial Park-Central, Attention:  Michael Farris, 12121 FM 529, Houston, Texas 77041 or facsimile number (713) 937-1746, or email to ldcnorthwoods@yahoo.com; or if for Tenant (i) prior to the Commencement Date to Gas Process Equipment Company, Attention: _____, _____, Houston, Texas, 770__, or email/fax                    ; (ii) Subsequent to the Commencement Date to the address for the Premises.  Such address may be changed from time to time by either Party by giving notice as provided above.  Notice shall be deemed given when delivered (if delivered by hand) or when postmarked (if sent by mail), or when received (if delivered by facsimile transmission or email).

**8.05.   Entire Agreement, Binding Effect and Severability.**  This Lease and any written addenda and all exhibits hereto (which are expressly incorporated herein by this reference) shall constitute the entire agreement between Landlord and Tenant.  No prior written or prior contemporaneous oral promises or representations shall be binding.  This Lease shall not be amended, changed or extended except by written instrument signed by both Parties hereto. The provisions of this Lease shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the Parties, but this provision shall in no way alter the restrictions on assignment and subletting applicable to Tenant hereunder.  If any provision of this Lease or the application thereof to any person or circumstance shall at any time or to any extent be held invalid or unenforceable, and the basis of the bargain between the Parties hereto is not destroyed or rendered ineffective thereby, the remainder of this Lease or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby.

**8.06.   Right of Re-Entry.**  Tenant hereby waives all claims by Landlord's re-entering and taking possession of the Premises or removing and storing the property of Tenant as permitted under this Lease and will save Landlord harmless from all losses, costs or damages occasioned Landlord thereby.  No such re-entry shall be considered or construed to be a forcible entry by Landlord.

**8.07.   Number and Gender; Captions; References.**   Pronouns, where used, of whatever gender, shall include natural persons, corporations and associations of every kind and character, and the singular shall include the plural and vice versa where and as often as may be appropriate.  Article and section headings under this Lease are for convenience of reference and shall not affect the construction or interpretation of this Lease.  Whenever the terms "hereof," "hereby," "herein" or words of similar importance are used in this Lease, they shall be construed as referring to this Lease in its entirety rather than to a particular section or provision, unless the context specifically indicates to the contrary.   Any reference to a particular "Article" or "Section" shall be construed as referring to the indicated article or section of this Lease.

**8.08.** **Quiet Enjoyment.** Tenant, on paying all sums herein called for and performing and observing all of its covenants and agreements hereunder, shall and may peaceably and quietly have, hold, occupy, use and enjoy the Premises during the Term subject to the provisions of this Lease, the Park Rules and Regulations and applicable governmental laws, rules and regulations; and Landlord agrees to warrant and forever defend Tenant's right to such occupancy against the claims of any and all persons whomsoever lawfully claiming the same or any part thereof, by, through or under Landlord, but not otherwise, subject only to the provisions of this Lease, Landlord's rules and regulations and all applicable governmental laws, rules and regulations.

**8.09** **Compliance with Property Code.** Landlord and Tenant agree that each provision of this Lease for determining charges, amounts and Additional Rent payments by Tenant constitutes a "method by which the charge is to be computed" for purposes of Section 93.012 (Assessment of Charges) of the Texas Property Code, as such section now exists or as it may be hereafter amended or succeeded.

**8.10.** **Authority.** The undersigned represents and warrants to Landlord that the undersigned is duly authorized to execute and deliver this Lease on behalf of the Tenant. Specifically, in the event Tenant is a corporation, the undersigned represents and warrants that the undersigned is duly authorized to execute and deliver this Lease on behalf of the Tenant as and in accordance with a duly adopted resolution of the Board of Directors of said corporation, and further represents and warrants that this Lease is binding upon said corporation.

**8.11.** **Waiver of Consumer Rights.** Tenant represents and warrants that it is represented by an attorney with respect to the negotiation of this Lease and that it has knowledge and experience in financial and business matters that enable it to evaluate the merits and risks of a transaction and is not in a significantly desperate bargaining position and meets the other requirements of Section 17.42 Vernon's Texas Code Annotated. **Tenant hereby expressly waives its rights under the provisions of the Deceptive Trade Practices/Consumer Protection Act, Section 17.41 *et seq,* Business & Commerce Code, a law that gives consumers special rights and protections, to the extent same may be lawfully waived. After consultation with an attorney of its own selection, Tenant voluntarily consents to this waiver.**

**8.12.** **Time of Essence.** In all instances where any act is required at a particular indicated time or within an indicated period, it is understood and stipulated that time is of the essence.

**8.13.** **No Real Estate Brokers.** Tenant warrants and represents to Landlord that, Tenant is not represented by any real estate agent or broker, nor has Tenant consulted with or obtained the assistance of any real estate agent or broker, in locating Landlord or the Premises or negotiating the terms of this Lease. Tenant further warrants and represents that Tenant has not

entered into any agreement or otherwise obligated either Landlord or Tenant for any real estate or other commission in connection with this Lease.

### 8.14. Environmental.

(a)     **Prohibition on Placement or Disposal.** Tenant shall not incorporate into, use, or otherwise place or dispose of at the Premises or in the Building any toxic or hazardous materials in concentrations or levels sufficient that by the then-applicable EPA, OSHA, or other applicable governmental standards cause the specific materials so identified to be classified or identified as toxic or hazardous materials, except for the limited purposes of use and storage only where (i) such materials are in small quantities, properly labeled and contained; (ii) such materials are handled and disposed of in accordance with the highest accepted industry standards for safety, storage,, use and disposal; (iii) such materials are for use in the ordinary course of business (i.e., as with office or cleaning supplies); (iv) notice of and a copy of the current material safety data sheet is provided to Landlord for each such hazardous or toxic material; and (v) such materials are used, transported, stored, handled and disposed of in accordance with all applicable governmental laws, rules and regulations.  If either Party ever has knowledge of the presence in the Premises or the Building of such toxic or hazardous materials which affect the Premises, such party shall notify the other thereof in writing promptly after obtaining such knowledge.  For purposes of this Lease, **"hazardous or toxic materials"** shall mean hazardous or toxic chemicals or any materials or wastes containing hazardous or toxic chemicals at levels or content which cause such materials or wastes to be classified as hazardous or toxic as then prescribed by the prevalent industry practice and standards or by the then-current levels or content as set from time to time by EPA or OSHA or as defined under 29 C.F.R. 1910 or 29 C.F.R. 1925 or other applicable governmental laws, rules and regulations.

(b)     **Covenant to Remove.**  If Tenant or its respective employees, agents or contractors shall ever violate the provisions of this Article, or if Tenant's acts, negligence, breach of this provision or business operations cause any contamination from toxic or hazardous materials, then  Tenant shall clean-up, remove and dispose of the material causing the violation, in compliance with all applicable governmental standards, laws, rules and regulations and repair any damage to the Premises or Building within such period of time as may be reasonable under the circumstances; provided, however, such work shall commence not later than thirty (30) days after such notice delivered by the Landlord and be diligently and continuously carried to completion.  Tenant shall notify Landlord of its method, time and procedure for any clean-up or removal of toxic or hazardous materials under this provision and, Landlord shall have the right to require reasonable changes in such method, time or procedure.

### 8.15. Not Binding Until Properly Executed.
Employees or agents of Landlord have no authority to make or agree to make a lease or other agreement or undertaking in connection herewith.  The submission of this document for examination does not constitute an offer to lease, or reservation of, or option for, the Premises. The document becomes effective and binding only upon the execution and delivery hereof by the proper officers of Landlord and by Tenant. Tenant confirms that Landlord and its agents have made no representations or promises with



respect to the Premises or the making of or entry into this Lease except as in the Lease expressly set forth, and Tenant agrees that no claim or liability shall be asserted by Tenant against Landlord, and Landlord shall not be liable by reason of, breach of any representations or promises not expressly stated in this Lease. This Lease can be modified or altered only by agreement in writing between Landlord and Tenant, and no act or omission of any employee or agent of Landlord shall alter, change or modify any of the provision hereof.

**8.16.** **Compliance with Laws, Recorded Covenants and Rules.** Tenant shall not use the Premises or permit anything to be done in or about the Premises which will, in any way, conflict with any law, statute, ordinance or governmental rule or regulation, the Industrial Park Rules and Regulations attached hereto or distributed to Tenant by Landlord and with the requirements of any fire insurance underwriters or other similar body now or hereafter constituted relating to or affecting the condition, use or occupancy of the Premises now in force or which may hereafter by enacted or promulgated. Tenant shall, at its sole costs and expense, promptly comply with all laws, statutes, ordinances, governmental rules and regulations now in force or which may hereafter be in force. Tenant shall use the Premises and comply with any recorded covenants, conditions, and restrictions affecting the Premises which are recorded during the Lease Term.

Tenant shall in all respects comply with the Americans With Disabilities Act of 1990 (42 U.S.C. 12101 et seq., the Texas Barrier Standard Act as well as similar statutes), as the same may be amended from time to time (as amended, the "ADA"), relating to the use of the Leased Premises and in addition to and without waiving any other indemnity contained in this Lease including without limitation Section 7.02 below, Tenant agrees to indemnify and save Landlord and its managing agent harmless against and from any and all claims, loss, damage and expense by or on behalf of any person or persons, firm or firms, corporation or corporations, arising from any failure or alleged failure of Tenant to comply with the ADA or arising from any claims made under the ADA in connection with the Premises, and from and against all costs, reasonable attorney's fees, expenses and liabilities incurred in or about any such claim or action or proceeding brought thereon; in case any action or proceeding be brought against Landlord or its managing agent by reason of any such claim, Tenant, upon notice from Landlord, covenants to resist or defend such action or proceeding by counsel reasonably satisfactory to Landlord.

**8.17.** **Tenant Obligations Survive Termination.** All obligations of Tenant hereunder not fully performed as of the expiration or earlier termination of the Lease Term shall survive the expiration of earlier termination of the Lease Term, including without limitation, all monetary obligations hereunder and all obligations concerning the condition of the Premises.

**8.18.** **Landlord.** As used herein the term "Landlord" shall include the Party identified as Landlord in the first Paragraph of this Lease Agreement, 529 #49, Ltd. and their servants, independent contractors, employees, agents and others acting on behalf of the owner of the property which is the subject of this Lease Agreement.



**8.19.** **Exhibits.** *See* Exhibits "A," "B" and "C" which are attached hereto and incorporated herein for all purposes as if same were fully set forth herein verbatim.

"LANDLORD"

529 #49, Ltd.,
a Texas Limited Partnership
12121 FM 529
Northwoods Industrial Park
Houston, Texas  77041
Facsimile Number (713) 937-1746

Date: *10-14-21*

By: _____
    Michael Farris
    Manager – Real Estate

"TENANT"

Tenant:
Address:
Address:
Telephone:
Facsimile: *281-320-6440*
Email:

Date: *10-13-21*

By: _____
    Name:
    Title: *President*

# EXHIBIT "A"



GAS PROCESS EQUIPMENT CO.

September 29, 2021

# GAS PROCESS EQUIPMENT Co.
## EXHIBIT "B"
### September 29, 2021

The Leased Premises at 11965 FM 529 will include the following existing facilities:

- The South half of a metal and cinder block warehouse and office space that is approximately 24,563 square feet.

- Three overhead vehicle doors, two 18 feet wide by 16 feet high, one facing South wall and one facing West wall and one 20 feet wide by 20 feet high facing South.

- One South pedestrian door.

- Two 25-ton top-riding overhead bridge crane in the East bay, on two 25-ton bridges.

- One 15-ton top riding overhead bridge crane in the West bay.

- Warehouse exterior security lights, one located in every other bay.

- Landlord standard screen fence on the South side with 40 foot wide sliding screen gate.

- Electrical service of 480 volt, 3 phase, 400 amperes to one 400 amperes warehouse disconnect.

- A mailbox with 2 keys, on FM 529.

- A grass and dirt outside yard area that is South and West of the warehouse.

The Landlord will:

- Service the overhead doors once before the lease commencement.

- Service the cranes once before the lease commencement.

- Service the HVAC systems once before the lease commencement.

- Service all of the lights once before the lease commencement.

- Install new carpet and paint in one office.

- Replace the two existing 15-ton hoist in the East bay with two 25-ton hoist.

The Tenant will:

- Maintain the Premises, including the HVAC, lawn sprinkler and cranes in accordance with the Terms of this Lease Agreement.

- Be responsible for any electrical and water distribution from Landlord-supplied source(s).

- Otherwise accept Premises "as is".

**EXHIBIT "C"**

| TERM | NUMBER OF MONTHS | NUMBER OF PAYMENTS | MONTHLY BASE RENT |
|---|---|---|---|
| December 1, 2021 Through November 30, 2024 | 36 | 36 | $14,985.00 |
| PROPERTY TAX | | | |
| December 1, 2021 Through November 30, 24 | 36 | 36 | $577.00 |

**Estimated annual property tax based on 2020 is $6,924.00

TDC Lease Form September 29, 2021